# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ISREAL, | CV F   04-5064 AWI SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITIONER'S FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| J. SULLIVAN, Warden, | [Docs. 8, 14, 16, 18, 22, 27] |
| Respondent. / | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND[1]

Petitioner is in the custody of the California Department of Corrections, pursuant to a conviction in 1979 after pleading guilty to one count of murder in the first-degree and one count of robbery. In 1983, Petitioner plead guilty to two counts of assault and one count of battery on a peace officer. Based on these counts and various enhancements, Petitioner was sentenced to a term of 25-years-to-life in prison. (Exhibit A, attached to Answer.) Petitioner was an escapee from a Missouri prison where he had been serving a thirty year sentence for manslaughter and robbery. Isreal v. Marshall, 125 F.3d 837, 838 (9th Cir. 1987).

On April 5, 2001, Petitioner attended his second parole consideration hearing before the

---

[1] This information is derived from the first amended petition for writ of habeas corpus, Respondent's answer, and Petitioner's traverse.

1

1  Board. (Exhibit B, attached to Answer.) Petitioner was represented by an attorney at the
2  hearing. At the conclusion of the hearing, Petitioner was found unsuitable for parole, and a
3  subsequent hearing was delayed for four years.
4        Following the Board's denial, Petitioner filed a petition in the Alameda County Superior
5  Court. The petition was denied as it failed to set forth a prima facie case for relief. (Exhibit D,
6  attached to Answer.) Petitioner next filed a petition for writ of habeas corpus in the California
7  Court of Appeal, First Appellate District and a petition for review with the California Supreme
8  Court.  Both petitions were summarily denied. (Exhibits E & F, attached to Answer.)
9        Petitioner filed the instant petition for writ of habeas corpus on October 16, 2003, in the
10 United States District Court for the Northern District of California. By order of January 7, 2004,
11 the petition was transferred to this Court, and filed on January 13, 2004. Petitioner filed an
12 amended petition on February 23, 2004, and a first amended petition of which this action
13 proceeds on May 17, 2004. (Court Docs. 5, 8.)
14       Pursuant to the Court's order of July 2, 2004, Respondent filed an answer to the petition
15 on November 3, 2004.[2] Petitioner filed a traverse on December 6, 2004. On January 13, 2005,
16 Petitioner, without leave of Court, filed a supplement to his traverse.
17       On September 21, 2005, Respondent, with leave of Court, filed a supplemental answer.
18 Petitioner filed a reply on January 6, 2006.
19       Petitioner first contends that the Board looked at his parole plans as if he would be
20 released in California which was unnecessary as he was scheduled to be sent back to Missouri to
21 serve the remainder of his thirty-year sentence. In Ground Two, Petitioner argues that the Board
22 relied on a defective psychological report. In Ground Three, Petitioner contends that the Board
23 recommended that he participate in therapy despite the fact that "one on one therapy" does not
24 exist in the California Department of Corrections. In Ground Four, Petitioner contends that the
25 Board based its determination on incomplete information regarding his commitment offense. In
26 Ground Five, Petitioner contends that the Board incorrectly held that he had mutilated the victim.
27
28       [2] Respondent sought and was granted an extension of the deadline. (Court Docs. 13, 17.)

In Ground Six, Petitioner contends that he should have been released on his first eligible parole date because he would merely be sent to prison in Missouri. In Ground Seven, Petitioner contends that the four year denial violates due process because his hearing would take place after his maximum eligibility parole date.

## DISCUSSION

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, __ F.3d __; 2006 WL 2506393 *2 (9th Cir. Aug. 31, 2006) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'"); White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004.

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the

4

1  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
2  state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
3  Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

   AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.   Subject Matter Jurisdiction/Liberty Interest in Parole

In his supplemental answer, Respondent seeks dismissal of the instant petition on the ground that there is no liberty interest in parole, and therefore, no cognizable federal due process claim. More specifically, Respondent contends that California's parole statute, as set forth in California Penal Code section 3041, does not give rise to a federal liberty interest.[3]

In Sass v. California Board of Prison Terms, the Ninth Circuit Court of Appeals, ruled that the District Court in Sass v. California Board of Prison Terms, 376 F.Supp.2d 976 (E.D. Cal. 2005) erred by finding that the California Supreme Court's decision in In re Dannenberg, 34 Cal.4th 1061 (2005), held that section 3041(b) does not use mandatory language. Sass v. California Board of Prison Terms, 2006 WL 2506393, at *3-4.

Initially, the Court noted that in McQuillion v. Duncan, 306 F.3d 895, 902 (2002), it was held that "[u]nder the 'clearly established' framework of Greenholtz and Allen, . . . California's parole scheme gives rise to a cognizable liberty interest in release on parole." Sass, 2006 WL 2506393 at *3 (citing McQuillion v. Duncan, 306 F.3d at 902). Furthermore, this "liberty

---

[3] The relevant California statutory language is contained in Cal. Penal Code § 3041, which states, in relevant part:
   (a) One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and *shall normally set a parole release date* as provided in Section 3041.5.

   (b) The panel or the board, sitting en banc, *shall set a release date unless it determines* that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting . . . .

Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added).

5

1    interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate."
2    Id. (citing Biggs v. Terhune, 334 F.3d 910, 915 (2003), footnote omitted).
3    　　　　The Ninth Circuit found that "Dannenberg addressed the narrow question whether the
4    Board must engage in a comparative proportionality analysis in setting parole dates pursuant to
5    section 3041(a) before determining whether an inmate is suitable for parole pursuant to section
6    3041(b), . . . holding '[n]othing in the statute states or suggests that the Board must evaluate the
7    case under standards of term uniformity before exercising its authority to deny a parole date on
8    the grounds the particular offender's criminality presents a *continuing public danger*.'" Sass,
9    2006 WL 2506393 *3 (citing Dannenberg, at 1070, emphasis in original, citations omitted.)  The
10   Court stated that the Dannenberg Court never held California law did not provide a liberty
11   interest in parole.  Rather, the California Supreme Court proceeded to the second step of the
12   analysis in determining whether the procedures utilized were constitutionally sufficient.  Id.
13   (citing Dannenberg, at 1070.)  Thus, the Ninth Circuit reasoned that the California Supreme
14   Court would not have proceeded to this analysis if there was, in fact, no liberty interest.  Id.
15   (citing Ky. Dep't of Corr., 490 U.S. at 460.)
16   　　　　Based on the reasoning and holding in Ninth Circuit Court of Appeal's opinion in Sass,
17   Petitioner continues to have a protected liberty interest in parole, and the instant petition is
18   therefore not subject to dismissal for lack of subject matter jurisdiction.
19   III.    Review of Claims
20   　　　　A parole release determination is not subject to all the due process protections of an
21   adversary proceeding. Pedro, 825 F.2d at 1398-99; see also Greenholtz, 442 U.S. at 12
22   (explaining that due process is flexible and calls for procedural protections that particular
23   situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution,
24   the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated,
25   even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of
26   Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process
27   to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing,
28   Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard,"

1  Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he
2  falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by
3  "some evidence" having an indicia of reliability, Superintendent, Mass. Correc. Inst. v. Hill, 472
4  U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

5       "In *Superintendent v. Hill*, the Supreme Court held that 'revocation of good time does not
6  comport with 'the minimum requirements of procedural due process,' unless the findings of the
7  prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454, 105
8  S.Ct. 2768, 86 L.Ed.2d 356 (1985) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct.
9  2963, 41 L.Ed.2d 935 (1974))." Sass v. California Board of Prison Terms, 2006 WL 2506393
10 *4. In determining whether the some evidence standard is met, the Court need not examine the
11 entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id.
12 Rather, the Court must determine whether there is any evidence in the record that could support
13 the conclusion of the disciplinary board. Id. (citing Superintendent v. Hill, at 455-56.) Although
14 Hill involved the accumulation of good time credits, the same standard applies to parole, as both
15 situations "directly affect the duration of the prison term." Id. (citing Jancsek v. Oregon Bd. of
16 Parole, 833 F.2d at 1390.)

17      With regard to the procedural protections outlined in Greenholtz, as Respondent submits,
18 Petitioner was provided all, and arguably more, that is required. Petitioner was provided with
19 advance notice of the hearing, representation by counsel at the hearing, an opportunity to submit
20 materials for the Board's consideration, an opportunity for him and his attorney to be heard
21 during the hearing, and a written decision explaining the reasons that parole was denied.
22 (Respondent's Exhibit B, generally, attached to Answer.)

23      A review of Petitioner's parole hearing reveals that the Parole Board's decision is amply
24 supported by some evidence. Specifically, the Board found that Petitioner's commitment murder
25 offense was carried out "in an especially cruel manner and a manner which demonstrates a

7

callous disregard for human suffering."[4] (Respondent's Exhibit B, attached to Answer, at 108.) This conclusion was based on the facts that while Petitioner was a fugitive from Missouri custody, and he fled to California where he became involved in a dispute with the victim. He drove the unarmed victim to an isolated area and shot the victim in the chest area several times and after the victim fell to the ground subsequently shot him at least three more times, despite the victim's pleas for his life. (Id. at 109.) The crime was carried out with a gun Petitioner had taken in an early robbery. (Id.) Petitioner argues that Board based its determination on incomplete information regarding his commitment offense. However, the Board's job is not to re-try the criminal offense; rather, the Board's job is to determine whether Petitioner poses an unreasonable risk of danger to society if released from prison. 15 Ca. Code. Regs. § 2402(a). Petitioner was provided the opportunity to discuss mitigating factors of his crime but chose not to discuss it. The evidence Petitioner sought to introduce at the hearing was a transparent attempt to re-try the case, and the tape of the co-defendant he sought to introduce had no bearing on his suitability for parole. (Respondent's Exhibit B, attached to Answer, at 16-17, 33-35.) In Ground Five, Petitioner further contends that the Board incorrectly held that he had mutilated the victim. Petitioner misconstrues the record. What the Board really said is that it considered that the victim was mutilated because the victim was initially "shot in the frontal portion of his body, chest area, possibly the shoulder and once the [victim] was down he was then shot three or four times in the back of the head." (Id. at 108-110.)

Since being in the custody of the California Department of Corrections, Petitioner committed three separate assaults on police officers. (Id.) Petitioner has had an unstable social

---

[4] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
    (C) The victim was abused, defiled or mutilated during or after the offense.
    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

history. He was sent to a boy's home in Missouri at age thirteen and was committed to state prison at age sixteen. (Id. at 109-110.) Petitioner had been disciplined eight times for misconduct in the prison since his last parole hearing and eighteen times since he was incarcerated. (Id. at 110.) Further, Petitioner suffered a manslaughter conviction while incarcerated in Missouri. (Id. at 114.)

A psychiatrist report authored by Dr. Tagliaferri stated that Petitioner suffered from anti-social personality disorder, and that Petitioner would be an above average threat to the community and would probably not function well. (Id. at 111; Respondent's Exhibit C, attached to Answer, at 3.) Petitioner argues that the report was defective because the psychiatrist interviewed Petitioner for only forty-five minutes. As Respondent argues, the report is clear that the psychiatrist's recommendation was based not only on the interview of Petitioner, but also a review of his Central-file. Further, Petitioner and his attorney were given the opportunity to argue to the Board that the psychiatrist report was of little probative value. (Respondent's Exhibit B, attached to Answer, at 48-54.) Moreover, even without the psychiatrist report, some evidence supports the Board's finding that Petitioner is unsuitable for parole (e.g., the seriousness of the commitment offense, assaults on police officers, his poor behavior in prison, and his prior criminal history). (Respondent's Exhibit B, attached to Answer, at 108-118.) Although the panel noted Petitioner's recent achievements including gaining his GED, completing a mechanical drawing vocational course, and receiving good work reports from his prison law library job, the panel found on balance that his recent behavior did not outweigh the factors demonstrating unsuitability. (Id. at 112.)

Petitioner contends that the Board improperly considered his parole plans as though for California despite being scheduled to be returned to Missouri to serve the remainder of his thirty-year sentence. The State of California must determine whether Petitioner is suitable for parole in California regardless of the situation in Missouri. Although there is a parole agreement between the State of California and the State of Missouri, it only comes into play once California has found Petitioner suitable for parole and a date has been set or he has been released. (Respondent's Exhibit B, attached to Answer, at 70-72; see also Ca. Penal Code § 11177.)

9

Petitioner would then have to request through a counselor of the parole division, not the Board of Parole review, to initiate a request for interstate transfer to Missouri which would determine whether to accept Petitioner. (Id.) California has no authority to force Missouri to imprison Petitioner once he is released from a California prison. Cf. Isreal v. Missouri, 125 F.3d at 839 (California law does not and can not require Missouri, an independent sovereign state, to accept custody of Petitioner.) Further, as Respondent submits, in order for the Board to fulfill its public protection mandates, the Board must be satisfied that Petitioner's release on parole will not endanger public safety. The Board simply cannot defer to another state to protect the public.

However, even if the Board improperly considered Petitioner's parole plans in California, as stated by the Superior Court of the County of Alameda, "The Board's decision was supported by sufficient evidence without any consideration of the Petitioner's plans upon parole in Alameda County." (Respondent's Exhibit D, attached to Answer, at 1.) This is so because the Board cited numerous other factors including among others, the circumstances of his commitment offense, his behavior while incarcerated in California, and his prior violent criminal history. These factors, without consideration of Petitioner's plans for parole in California, support the Board's decision to deny Petitioner parole. This conclusion is supported by the Board's recommendation that Petitioner should seek "self-help programming in order to face, discuss, understand and cope with stress in a non-destructive manner," and he must demonstrate his accomplishments over an extended period of time. (Respondent's Exhibit B, attached to Answer, at 112.) Petitioner claims that the Board unfairly recommended that he participate in therapy when "one on one therapy" does not exist at Pelican Bay State Prison. However, as Respondent submits, the Board was merely making a recommendation of something Petitioner should pursue, if available. Further, the Board noted that Petitioner should participate in "self-help programming." Moreover, there is no indication that Petitioner will be denied parole on this basis alone in the future.

Petitioner was denied parole for a period of four years. In this regard, Petitioner contends that the four-year denial violates due process because his hearing would take place after his maximum eligibility parole date. Petitioner's claim is without merit. Pursuant to California law,

10

when an inmate, such as Petitioner, is serving an indeterminate sentence (here 25 years to life), the Parole Board must first determine whether the prisoner is suitable for parole, i.e. whether he poses an unreasonable risk of danger to society if released from prison, and only after the Board deems the inmate suitable for release is a release date set. Ca. Penal Code § 3041; 15 Cal. Code Regs. § 2282. Accordingly, Petitioner's claim is without merit.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and
2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 17, 2006**                    **/s/ Sandra M. Snyder**
icido3                                                 UNITED STATES MAGISTRATE JUDGE